**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SHERRY K. WALRAVEN,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | No. CV07-02041-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment of Plaintiff Sherry K. Walraven. (Dkt. # 16.) Defendant Michael J. Astrue, Commissioner of Social Security, responded to that motion (Dkt. # 21), but he did not style his response as a cross-motion for summary judgment, which was the usual procedure at the time Plaintiff's motion was filed.[1] However, Defendant's response does request that the Court "issue judgment affirming the Commissioner's final decision" (*id.* at 8), and thus the Court will treat Defendant's response

---

[1] Effective December 1, 2008, this Court's local rules now provide that social security cases are to be briefed in accordance with traditional appellate procedure, and not through motions and cross-motions for summary judgment. *See* LRCiv 16.1. Because briefing in this case began before those changes took effect, the Court will decide the case under the prior procedural rules. The Court notes that the substance of this decision is unaffected by the changes to the local rules.

as a cross-motion for summary judgment. For the reasons set forth below, the Court grants Plaintiff's motion and denies Defendant's cross-motion.

## BACKGROUND

On January 16, 2004, Plaintiff applied for both disability insurance benefits and supplemental security income, alleging a disability onset date of October 13, 2003. (R. at 55-66.) Plaintiff's claim was denied both initially and upon reconsideration. (R. at 51, 540; R. at 45.) Plaintiff then appealed to an Administrative Law Judge ("ALJ"). (R. at 538.) The ALJ conducted a hearing on the matter on November 27, 2006. (R. at 551-89.)

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[2] (R. at 12-22.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity. (R. at 17.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of "an affective disorder and generalized arthralgias." (*Id.*) At step three, the ALJ determined that none of

---

[2]The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income benefits). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.*)

At step four, the ALJ made a determination of Plaintiff's residual functional capacity ("RFC"),[3] concluding that Plaintiff has the capability of performing a general range of work, with the ability to lift and carry fifty pounds occasionally and twenty-five pounds frequently, to stand and/or walk for six hours in an eight-hour workday, and to sit for six hours with alternated sitting and standing. (*Id.*) The ALJ found "mainly mild mental limitations, with mild limitations in restriction of activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace and no episodes of decompensation." (R. at 18.) The ALJ thus determined that Plaintiff retained the RFC to perform her past relevant work as a waitress, telemarketer, and counter worker. (R. at 21.) The ALJ also reached step five, determining that Plaintiff could perform a significant number of other jobs in the national economy that met her RFC limitations. (R. at 21-22.) Therefore, the ALJ concluded that Plaintiff was not disabled. (R. at 22.)

The Appeals Council declined to review the decision. (R. at 4-7.) Plaintiff filed the complaint underlying this action on October 19, 2007, seeking this Court's review of the ALJ's denial of benefits.[4] (Dkt. # 1.) Plaintiff filed her Motion for Summary Judgment on August 14, 2008. (Dkt. # 16.) Defendant filed his response, which the Court interprets as a cross-motion for summary judgment, on September 15, 2008. (Dkt. # 21.)

---

[3] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* SSR 96-8p.

[4] Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (2004) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

- 3 -

**DISCUSSION**

**I.    Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

**II.   Analysis**

Plaintiff argues that the ALJ erred in five ways: (A) by finding that Plaintiff suffers from the severe impairment of affective disorder, rather than major depressive disorder and bipolar disorder (Dkt. # 18 at 2-3 n.1); (B) by failing to adequately explain why he found that Plaintiff's impairments did not meet or equal a listed impairment (*id.* at 3 n.2); (C) by disregarding the opinion of Dr. Honory, a treating physician (*id.* at 7-11); (D) by disregarding Plaintiff's subjective complaint testimony (*id.* at 11-13); and (E) by failing to consider a

function report completed by a lay witness (*id.* at 13-14). The Court will address each argument in turn.[5]

### A.   Severity Determination

Plaintiff argues that the ALJ erred by finding that she suffers from the severe impairments of an affective disorder, as opposed to major depressive disorder and bipolar disorder, asserting that these impairments "must be considered at step two of the sequential evaluation process." (Dkt. # 18 at 2-3 n.1.) "[A]t the second step of [the] sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments 'of such severity' as to be the basis of a finding of inability to engage in any [substantial gainful employment]." SSA 85-28. Put simply, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

Here, the ALJ did not dispose of Plaintiff's claim and did not rule out any impairment as being not severe – he merely characterized the impairment he found severe as an affective disorder, rather than bipolar disorder and depressive disorder. (R. at 17.) As Defendant points out, depression and bipolar disorder are affective disorders. *See* Listing 12.04(A)(1)

---

[5]Evidently to comply with the page limitations of the local rules, Plaintiff presents the first and second of these arguments in small-font footnotes. (Dkt. # 18 at 2-3 nn.1-2.) In seeking to satisfy one local rule, Plaintiff has violated another, for these footnotes fail to comply with the Court's font limitations. *See* LRCiv 7.1(b)(1). The Court also points out that these footnotes undermine the spirit of the local rules – substantive arguments are to be presented in the text of a motion, not in footnotes, for otherwise the Court's page limitations and double-spacing requirements are rendered meaningless. The Court would be well within its discretion to strike these arguments, if not Plaintiff's entire pleading, given this lack of conformity to the local rules. *See* LRCiv 7.1(d)(5). However, because Defendant does not object to Plaintiff's first two arguments, and responds to them at length, the Court will address those arguments.

1  ("Depressive syndrome"); Listing 12.04(A)(3) ("Bipolar syndrome").[6]  Thus, these
2  impairments were considered, and included, in the ALJ's determination at step two.
3        Moreover, even if the ALJ's framing of Plaintiff's conditions did constitute error, such
4  error would be harmless because it did not affect his ultimate decision. *See Batson*, 359 F.3d
5  at 1197 (finding an ALJ's error was harmless because the court determined that the error did
6  not affect the ALJ's ultimate conclusion).  Here, the ALJ considered the relevant evidence
7  of Plaintiff's bipolar and depressive symptoms throughout the rest of the sequential
8  evaluation. (*See* R. at 20-21.)  Indeed, the ALJ explicitly agreed that Plaintiff suffered from
9  an "episodic bipolar condition" and "situational depression." (R. at 20.)  Thus, any error in
10 characterizing Plaintiff's severe impairments as affective disorder, as opposed to depression
11 and bipolar disorder, would be harmless.
12       For these reasons, the ALJ did not commit reversible error at step two.
13     **B.**    **Equivalence Determination**
14       Plaintiff argues that the ALJ erred by failing to adequately explain his finding at step
15 three of the sequential evaluation that none of Plaintiff's impairments meet or equal a listed
16 impairment. (Dkt. # 18 at 3 n. 2.)  "An ALJ must evaluate the relevant evidence before
17 concluding that a claimant's impairments do not meet or equal a listed impairment. *A*
18 *boilerplate finding is insufficient to support a conclusion that a claimant's impairment does*
19 *not do so*." *Lewis*, 236 F.3d at 512 (emphasis added).  Here, the ALJ agreed that Plaintiff
20 suffered from the severe impairment of affective disorder. (R. at 17.)  Affective disorder is
21 a listed impairment. *See* Listing 12.04.  Yet the ALJ did not explain why Plaintiff's severely-
22 impairing affective disorder did not meet the requirements of the analogous listing.  Rather,
23 the ALJ offered only the following conclusory statement for its step three analysis: "The
24 claimant does not have an impairment or combination of impairments that meets or medically
25 equals one of the listed impairments in [the regulations]." (R. at 17.)  This statement is

---

27     [6]The Listing of Impairments is found in Title 20 of the Code of Federal Regulations, Chapter III, Part 404, Subpart P, Appendix 1.  For ease of citation, a listed impairment will
28 be cited as a "Listing."

- 6 -

precisely the kind of "boilerplate finding" the Ninth Circuit has found insufficient at step three. *See Lewis*, 236 F.3d at 512. Thus, the ALJ erred at step three.

Defendant argues that this is not error because the ALJ determined, at step four of the sequential evaluation, that Plaintiff had the RFC to perform her past relevant work. (Dkt. # 21 at 2-3.) Defendant is mistaken. The sequential evaluation must be applied as a *sequence*, so that, if a claimant is found disabled at any step, a finding of disability is mandated and the evaluator should not proceed to further steps. 20 C.F.R. § 404.1520(a)(4) ("The sequential evaluation process is a series of five 'steps' that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."); 20 C.F.R. § 416.920(a)(4) (same). If the claimant is found to meet a listed impairment at step three, a finding of disability is mandated. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 416.920(a)(4)(iii). Thus, the ALJ's later finding at step four could not retroactively account for a defect at step three.

Nor are the step three and step four analyses synonymous. Thus, a finding on one cannot serve as a finding on another. Step three focuses on a claimant's medical condition; the evaluator must determine whether that condition meets or equals the specific criteria of a listed medical impairment. *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 416.920(a)(4)(iii). Step four focuses on a claimant's work capacity; the evaluator must determine the most the claimant can do given her impairments (her RFC) and, in light of that RFC, whether she can perform her past work. *See* 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv). Because these inquiries are distinct, the ALJ's finding at step four does not obviate the need for a step-three finding. As explained above, that finding must be explained and supported. *See Lewis*, 236 F.3d at 512. Because it was not in this case, the ALJ committed error.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C. Treating Physician Testimony

Plaintiff argues that the ALJ erred in disregarding the opinion of Dr. Honory, her treating physician.[7] (Dkt. # 18 at 7-11.) "The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). If a treating doctor's opinion is not contradicted by another doctor, that opinion may be rejected only for "clear and convincing reasons" supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Clear and convincing reasons are also required to reject a treating physician's subjective judgments and ultimate conclusions. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Embrey*, 849 F.2d at 422 ("The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations. Accordingly, the ultimate conclusions of those physicians must be given substantial weight; they cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail."). If the treating doctor's opinion is contradicted by another doctor, the ALJ can reject the opinion only by providing "specific and legitimate reasons" supported by substantial evidence. *Reddick*, 157 F.3d at 725. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey*, 849 F.2d at 421 (quotation omitted). Mere conclusions are insufficient; the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

Here, Dr. Honory offered the opinion that Plaintiff was "markedly limited" (i.e., that "[p]erformance of the designated work-related mental function is totally precluded on a sustained basis") in thirteen categories of mental functioning. (*See* R. at 462-66.) Dr. Honory further opined that Plaintiff was "moderately limited" (i.e., that "[p]erformance of the designated work-related mental function is not totally precluded, but it is substantially

---

[7] Plaintiff notes that Dr. Honory's opinion was consistent with the opinion of another physician, Dr. Allen (*see* Dkt. # 18 at 8), whose opinion the ALJ also rejected (*see* R. at 20-21). Plaintiff, however, does not argue that the ALJ erred in discounting Dr. Allen's opinion.

- 8 -

1  impaired") in five categories of mental functioning. (*See id.*) Dr. Honory thereafter stated
2  that Plaintiff's mental impairments would prevent her from completing a workday more than
3  three or four times per month. (R. at 465.)

4        The ALJ rejected Dr. Honory's opinion for a number of reasons. (R. at 20-21.) The
5  ALJ pointed out that three evaluating physicians offered the opinion that Plaintiff's
6  limitations were only mild to moderate, and did not meet the criteria for functional
7  limitations. (R. at 192, 218-19; R. at 206; R. at 230-21.) For example, one of those
8  physicians opined that Plaintiff "can understand, remember and carry out simple work
9  instructions," that her "persistence, pace, attention and concentration is adequate for []
10 routine, low skill level work situations," and that there were "[n]o problems noted in
11 [Plaintiff's] ability to adapt to changes in work and living situations." (R. at 220.)

12       The ALJ further assessed Plaintiff's treatment notes at Mohave Mental Health Clinic
13 ("MMHC"), concluding that they indicated a bipolar condition that was episodic, depression
14 that was under control, especially through medication, and symptoms that were generally
15 improving over time. (*See* R. at 243-92, 350-458.) The ALJ took particular notice of those
16 treatment notes authored by Dr. Honory himself that were inconsistent with a sustained and
17 continual inability to work. For example, on October 21, 2004, Dr. Honory reported that
18 "overall since she started taking [her medication] she has been doing better." (R. at 245.)
19 In that note, Plaintiff reported that the medicine "level[ed] her out" and made her moods
20 "more tolerable." (*Id.*) Dr. Honory further reported that the result of his mental status exam
21 was that Plaintiff was alert and fully oriented, with normal speech and psychomotor activity.
22 (*Id.*) "Her stated mood was 'better' with bright and euthymic affect. . . . Her thought process
23 was goal oriented and goal directed and her insight and judgment were fair." (*Id.*) Dr.
24 Honory concluded Plaintiff's medications had reduced her symptoms and "it is quite evident

that her mood swings have decreased in intensity." (*Id.*) He assessed Plaintiff's global assessment of functioning ("GAF") at 55-60.[8] (*Id.*)

This note is consistent with many others in the record. Another progress note, from April 6, 2004, likewise indicates that Plaintiff does better on medication, including that she "does not seem to hold grudges," "does not get upset and hurt as much and as easily," and "seems to be able to handle difficult situations better." (R. at 251.) Plaintiff's mental status exam was also similar to that described above, as was her GAF score. (R. at 252.) A progress note from February 12, 2004, again indicated that Plaintiff's depression improved with medication. (R. at 257.) Yet another progress note, on August 5, 2004, provided that the medication was helpful. (R. at 427.)

In fact, numerous progress notes throughout the treatment period contain mental status evaluations with generally similar results (appropriate appearance, mood, and affect, cooperative behavior, coherent speech, normal perception, and logical thought processes), as well as similar GAF scores (55-60). (R. at 256, 258, 266, 353, 355, 361, 375, 376, 381, 386, 427, 430, 450.) An October 17, 2005, progress note provides that Plaintiff herself reported "making a lot of progress." (R. at 361.) Moreover, there are many progress notes that report that Plaintiff was "doing ok." (R. at 250, 254, 354, 360, 365.) The ALJ also pointed out that even Dr. Allen, on May 20, 2004, assessed Plaintiff's GAF at 65 (R. at 241), which puts her in the middle of the "mild symptoms" range, indicating that she was "generally functioning pretty well." DSM-IV, *supra*, at 34.

---

[8]The GAF scale ranges from 1 to 100 and reflects a person's overall psychological, social, and occupational functioning. *See Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000) (hereinafter "DSM-IV"). Scores between 51 and 60 indicate "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *Id.* at 34. For context, the grouping of scores above this range (61-70) indicates mild symptoms and only some difficulty in functioning, while the grouping of scores below (41-50) indicates serious symptoms or impairment, including that the individual is "unable to keep a job." *Id.*

- 10 -

1   Thus, the ALJ's conclusion – that Dr. Honory's opinion was inconsistent with the
2  opinions of other doctors, inconsistent with his own treatment notes, and inconsistent with
3  many of Plaintiff's medical records – is supported by substantial evidence. These are all
4  legally proper factors on which an ALJ may rely in rejecting a physician's opinion. *See*
5  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (holding that it is appropriate to reject
6  the opinion of a treating physician if it is inconsistent with other doctors' opinions, other
7  evidence in the record, and his own treatment notes). Therefore, the ALJ did not commit
8  legal error and his findings are supported by substantial evidence.

9   Plaintiff's arguments to the contrary are unavailing. Plaintiff argues that "the ALJ
10  does not identify the conflict nor does he cite to the specific treatment records which
11  support[] the allegation." (Dkt. # 18 at 9.) To the contrary, the ALJ does cite to specific
12  treatment notes in discussing Plaintiff's mental impairments, sometimes by date, sometimes
13  by exhibit and page number, and he explicitly spelled out the nature of the conflicts upon
14  which he relied (specifically, that other assessments "indicated some moderate limitations,
15  but did not prevent sustained work activities," that Plaintiff's condition was "episodic" and
16  "improved with medication," that her mental status exams, including some of those authored
17  by Dr. Honory, were often normal, and that Plaintiff's GAF scores were generally in the
18  moderate or better range). (*See* R. at 20-21.)

19   Plaintiff also argues that the ALJ's reliance on GAF scores as evidence of non-
20  disability was inappropriate because GAF scores do not directly correlate to the severity
21  requirements in the Listing of Impairments. (Dkt. # 18 at 10.) The Ninth Circuit, however,
22  has explicitly relied on GAF scores as part of its disability analysis. *See, e.g.*, *Schneider v.*
23  *Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973-74 (9th Cir. 2000). Here, there is no
24  evidence that the ALJ treated the GAF scores as dispositive or otherwise accorded them
25  improper weight; rather, they were simply one piece of evidence upon which the ALJ relied
26  in making the disability determination. (*See* R. at 20-21.) Thus, the ALJ did not err in this
27  regard.

28

Finally, Plaintiff points out that some of the MMHC records indicate that Plaintiff was described as being tearful and/or depressed, which is consistent with Dr. Honory's opinion. (Dkt. # 18 at 11 (citing R. at 251-53, 260, 267, 282-91, 434, 435).) This argument goes to the interpretation and weight of the evidence, which is not a question for this Court. "The [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (citations omitted). Here, the evidence could rationally be interpreted as supporting a finding of non-disability, and thus the Court will not disturb that interpretation. *See Andrews*, 53 F.3d at 1039; *Batson*, 359 F.3d at 1198.

### D.     Subjective Complaint Testimony

Plaintiff argues that the ALJ erred in rejecting her subjective complaint testimony. (Dkt. # 18 at 11-13.) "Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (quoting 42 U.S.C. § 423(d)(5)(A) (2006)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of [those symptoms]." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Specifically:

> The ALJ may consider at least the following factors when weighing the claimant's credibility: [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

1  *Thomas*, 278 F.3d at 958-59 (internal quotations omitted).  The ALJ's findings must be
2  "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit
3  [the] claimant's testimony."  *Id.* at 958.

4        Plaintiff has reported numerous subjective complaints, both physical and mental,
5  throughout her treatment history, including panic, anxiety, depression, general pain, and
6  fatigue.  (*See, e.g.*, R. at 243-92, 350-458.)  The ALJ agreed that Plaintiff's impairments
7  could reasonably be expected to produce the symptoms of which Plaintiff complained, but
8  nonetheless concluded that "the claimant's statements concerning the intensity, persistence
9  and limiting effects of these symptoms are not entirely credible."  (R. at 21.)  The ALJ laid
10 out Plaintiff's subjective complaints in the following way:

> The claimant testified that her hip bothered her after long periods of sitting and she experienced depression and crowds bothered her and she sometimes panicked. She indicated she had isolated herself and a classroom was stressful for her and she had memory problems. The claimant further testified that she had periods of high energy and then has a depressive period. She was currently in a down mood.

15 (R. at 21.)  Then, the ALJ discounted those complaints under the following reasoning:
16 "This was not substantiated by the record.  There was no significant evidence of side-effects
17 from medication."  (*Id.*)

18       The ALJ's rationale is legally insufficient.  The ALJ's statement that Plaintiff's
19 subjective complaints are not substantiated by the record is, at most, an invocation of the
20 "insufficient objective evidence" reasoning that has been rejected by the Ninth Circuit.
21 *Moisa*, 367 F.3d at 885 ("[A]n ALJ may not reject a claimant's subjective complaints based
22 solely on [the] lack of objective medical evidence to fully corroborate the alleged severity
23 of [symptoms].").  Furthermore, the ALJ made no finding of malingering, and thus was
24 required to make "specific findings as to credibility and stat[e] clear and convincing reasons
25 for each."  *Robbins*, 466 F.3d at 883.  The ALJ's analysis here includes neither specific
26 findings nor any reasons for discounting Plaintiff's subjective complaints – other than the
27 notation about side-effects, which is perplexing given that Plaintiff's subjective complaints
28 are not alleged to result from the side-effects of medication.  In sum, the ALJ's findings are

- 13 -

1    not "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily
2    discredit [the] claimant's testimony." *Thomas*, 278 F.3d at 958.  The ALJ therefore
3    committed reversible error.

### E.    Lay Witness Testimony

Plaintiff argues that the ALJ erred because he failed to consider a function report offered by a lay witness.  (Dkt. # 18 at 13-14.)  "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal citations and quotations omitted).  "Indeed, lay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment.  Consequently, if the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness."  *Id.*

Here, the record contains a third-party function report that was completed by Plaintiff's neighbor/friend.  (R. at 153-62.)  The report provides that Plaintiff is "depressed all the time" (R. at 157), that she "can't remember when she does things and where things are," "forgets instructions," and "disagrees with everyone" (R. at 158), and that she can pay attention for "not long – maybe 5 min[utes]" (*id.*).  The report also provides that Plaintiff does not follow instructions well, does not get along with authority figures (including bosses), and reacts to stress by getting "angry," "frustrated," and "depressed," and thus "won't talk."  (R. at 158-59.)  The report further states that Plaintiff "is always fearful of things [and] always affraid [sic] of making decisions or mistakes" (R. at 159), and that she is "always negative and depressed" and "flys [sic] off the handle unexpectedly" (R. at 160).

The ALJ failed to discuss this function report at all (*see* R. at 12-22), and it is clear that the ALJ did not credit the report given the ALJ's hypotheticals and his finding of only mild mental limitations on work (*see* R. at 585 ("I'd like for you to consider the following limitations, if you would.  Assume a person has an unlimited ability to follow work rules, use judgment, function independently and maintain attention and concentration. . . . [and] a good ability – or very good ability, to understand, remember and carry out complex job

instructions . . . ."); R. at 20). Thus, the ALJ committed reversible error. *See Stout*, 454 F.3d at 1053.[9]

### III. Remedy

Having decided to vacate the ALJ's decision, the Court has the discretion to remand the case either for further proceedings or for an award of benefits. *See Reddick*, 157 F.3d at 728. The rule in this Circuit is that the Court should:

> credit[] evidence and remand[] for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

In this case, the error at step three stemmed from the ALJ's failure to explain his finding that Plaintiff's impairment did not meet or equal a listed impairment. Although the ALJ found that Plaintiff's affective disorder is a severe impairment, that step-two determination does not resolve the step-three question of whether Plaintiff's affective disorder meets Listing 12.04. That Listing requires the presence of both "A" criteria and "B" criteria, or the independent satisfaction of the "C" criteria, in order to be met. *See* Listing 12.04. The "A" criteria are composed of the medically-documented persistence, either continuous or intermittent, of depressive syndrome (characterized by at least four of nine symptoms), manic syndrome (characterized by at least three of eight symptoms), or bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of

---

[9]Defendant essentially concedes that the ALJ erred in failing to address this evidence, but argues that the error was harmless because this evidence "would have to be consistent with the weighted medical evidence." (Dkt. # 21 at 6) Defendant contends that it is not because the ALJ found only mild mental limitations. (*Id.* (citing Dkt. # 21 Att. 1 ¶ 40).) Thus, Defendant is arguing that the ALJ did not err in failing to consider evidence of mental limitations because, by failing to consider that evidence, he found no mental limitations. That reasoning is entirely circular and is unsupported by any caselaw. Therefore, the Court cannot find that the error was harmless.

- 15 -

both manic and depressive syndromes (and currently characterized by either or both syndromes). *See* Listing 12.04(A). The "B" criteria require that the "A" criteria result in at least two of four functional limitations (marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration). *See* Listing 12.04(B). The "C" criteria provide that a listing is met if the claimant has a medically-documented history of a chronic affective disorder lasting at least two years that has caused more than a minimal limitation of the ability to perform basic work activities, "with symptoms or signs currently attenuated by medication or psychosocial support," in concert with one of three other factors (repeated episodes of decompensation, each of extended duration; a residual disease process resulting in only marginal adjustment such that even a minimal increase in mental demands or environmental change would be predicted to cause decompensation; or a history of an inability to function outside of a highly supportive living arrangement for one or more years, with an indication of a continued need for such an arrangement ). *See* Listing 12.04(C).

Here, it is unclear whether the ALJ disregarded any or all of the underlying evidence regarding one or more of these factors or if he accepted the evidence but decided that the evidence did not meet the Listing's requirements. Thus, the Court cannot definitively conclude from the record that Plaintiff's impairments do or do not meet or equal a listed impairment. If the Court found error in the ALJ's decision to disregard Dr. Honory's opinion, then a remand for an award of benefits might be required – but because the Court has concluded that there was no such error, a remand for further proceedings is the appropriate course of action. *See Lester*, 81 F.3d at 830 (stating that if legal error at step three "were the only error committed by the Commissioner, we would be required to remand for [further proceedings]," but instead remanding for an award of benefits because the ALJ also erred in rejecting treating physician testimony that established that the claimant was disabled).

- 16 -

With respect to Plaintiff's subjective complaints and the lay witness testimony, the vocational expert did not testify that Plaintiff would be unable to work if either such evidence were credited. Rather, the vocational expert only testified that Plaintiff would be disabled if Dr. Honory's opinion were credited (R. at 585-86), and, for the reasons discussed above, the ALJ did not err in rejecting Dr. Honory's opinion. Thus, it is not "clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited," and there remain "outstanding issues that must be resolved before a determination of disability can be made." *Smolen*, 80 F.3d at 1292. Under these circumstances, the Court will remand for further proceedings.[10]

## CONCLUSION

The ALJ erred at step three of the sequential evaluation by failing to explain why Plaintiff's severe impairments did not meet or equal a listed impairment. The ALJ also erred at steps four and five by disregarding Plaintiff's subjective complaint testimony without sufficient explanation and by disregarding the testimony of a lay witness without comment. Because there remain outstanding issues yet to be resolved and it is not clear that the ALJ would be required to award benefits, a remand for further proceedings is appropriate.

---

[10]Plaintiff states in his remedy section that the ALJ "failed to address functional limitations to be considered at steps four and five," including "the ability to use judgment, respond appropriately to supervisors, respond appropriately to co-workers, and respond to usual work situations." (Dkt. # 18 at 15.) Plaintiff's argument is not entirely clear, and Plaintiff offers no caselaw to assist the Court's review. As best the Court can determine, Plaintiff is merely making a general summation of why Plaintiff's previous arguments require an award of benefits. Because the Court has concluded that several of Plaintiff's assertions of error lack merit, much of Plaintiff's remedy section is inapposite. Thus, these statements would require no further exposition.

To the extent Plaintiff is attempting to assert independent error by these statements, the Court finds none. Plaintiff's only citation is to 20 C.F.R. § 404.1521, which outlines examples of the abilities necessary to perform basic work activities. However, it is clear from the Court's review that the ALJ considered the evidence in light of all of the examples set out in 20 C.F.R. § 404.1521. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJs opinion."). Thus, even if Plaintiff is asserting independent error in her remedy section, the Court concludes that there is no such error.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. # 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's response, which the Court interprets as a cross-motion for summary judgment (Dkt. # 21), is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** for further proceedings.

**DATED** this 31st day of December, 2008.

_____
G. Murray Snow
United States District Judge

- 18 -